**Donald Gilbert CLARK,
Plaintiff-Appellant,**

v.

**YOSEMITE COMMUNITY COLLEGE DISTRICT, Kenneth N. Griffin, Louis Zellers, Jack McArthur, Larry Roskens, Richard Peralta, Thomas VanGroningen, Robert Cardoza, Dr. Grant E. Bare, Glenda S. Alpers, Ian W. Hardie, Carmen Jackson, Nancy Rosasco, Allister A. Allen, and Does 1 through 30, inclusive, Defendants-Appellees.**

No. 85–1801.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1985.

Decided March 25, 1986.

Martin T. Snyder, Sellar, Hazard, Snyder & Kelly, Walnut Creek, Cal., for plaintiff-appellant.

C. Carol Stevens, Whitmore & Kay, Palo Alto, Cal., for defendants-appellees.

Before WRIGHT, KENNEDY and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

A college instructor brings this section 1983 suit against the college and various college officials seeking an injunction and damages for interference with his teaching responsibilities. He alleges that such interference is in reprisal for his criticism of the college's instructional program. The district court found that the instructor had raised a cause of action involving interference with his teaching duties in a previous state court proceeding for a writ of mandate against the college and its officials. The district court granted the college's motion for judgment on the pleadings, ruling that the section 1983 claim was precluded by res judicata. We affirm in part and reverse in part.

## I

### BACKGROUND

Donald Gilbert Clark is employed as an instructor in the criminal justice training center located at Modesto Junior College, a campus in the Yosemite Valley Community College District ("College"). In January of 1981, the College received numerous complaints that Clark was engaging in sexual harassment of and discrimination against female trainees at the center. Information concerning the charges was entered into Clark's personnel file. In addition, Clark alleges he was reassigned to teach different classes; his class schedule was changed every semester, with little or no notice, allowing him little time to prepare; and his teaching load was reduced. Clark also alleges College officials discouraged third parties from contracting his services as a private instructor, and caused the publication in community newspapers of defamatory accusations against him.

Clark contends that the interference with his teaching duties, the inclusion of the derogatory information in his personnel file, and the other alleged incidents constituted retaliation against him for his criticism of the College's administration of the criminal justice training center, including his cooperation with a grand jury investigation of the program.

In April, 1982, Clark filed a petition for a writ of mandate in a California trial court. In his petition, motion, and supporting memoranda, Clark alleged defamation, denial of a hearing on the charges of misconduct, interference with rights of union representation, punitive interference with his teaching duties, and violation of a purport-

ed right to be assigned to teach particular courses. He moved for a writ of mandate ordering the College to remove the derogatory material from his files and to desist from interfering with his teaching responsibilities. At the mandamus hearing, Clark called several witnesses and submitted numerous exhibits regarding his claims. The trial judge granted a writ of mandate in February, 1983, ordering the removal of documents related to the sexual harassment charges from his personnel files, on the ground he had not been notified of his right to respond to the material as required by state statute.

Clark subsequently brought this action in federal district court under 42 U.S.C. §§ 1983, 1985, and 1986, alleging a violation of his rights under the First, Sixth, and Fourteenth Amendments. His amended complaint alleges defamation, due process violations, retaliatory interference with his teaching duties, and violation of a purported right to teach particular courses. The district court granted defendants' motion for judgment on the pleadings, ruling that the doctrine of res judicata precluded a claim alleging deprivation of the same primary rights previously litigated in the state mandamus proceeding. Clark's motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment was denied, and he timely appeals.

## II

### RES JUDICATA

#### A. Application of Res Judicata (Claim Preclusion)

█ When a state court judgment is the source of the supposed res judicata (claim preclusion), 28 U.S.C. § 1738 provides that a federal court must give the state court judgment the same full faith and credit as it would be entitled to in the courts of the state in which it was entered.

*Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) (interpreting 28 U.S.C. § 1738); *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (same). The district court's construction of the California law of res judicata is reviewable *de novo. See In re McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).

In *Eichman v. Fotomat Corp.,* 147 Cal. App.3d 1170, 1174–75, 197 Cal.Rptr. 612, 614 (1983), the court explained the concept of res judicata as applied in California:[1]

California law approaches the issue by focusing on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.

*See also Slater v. Blackwood,* 15 Cal.3d 791, 795, 543 P.2d 593, 594, 126 Cal.Rptr. 225, 226 (1975).

The question is whether this federal litigation involves the same "cause of action," conceived of as the remedial right for the violation of one "primary right." *Sawyer v. First City Financial Corp., Ltd.,* 124 Cal.App.3d 390, 399, 177 Cal.Rptr. 398, 402–03 (1981). A "primary right" is best defined as the "right to be free from the particular unlawful conduct." 124 Cal. App.3d at 399–400, 177 Cal.Rptr. at 403.

█ Clark contends that he sought a writ of mandate for the limited purpose of having derogatory material removed from his personnel files, which had been placed there in contravention of state statutory procedures requiring prior notice to the public education employee. If this is true, res judicata will not apply in this case. His

---

1. It is well established in California that the doctrine of res judicata applies to judgments in mandamus proceedings. *Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control,* 55 Cal.2d 728, 733, 361 P.2d 712, 715, 13 Cal.Rptr. 104, 107 (1961); *Trujillo v. County of Santa Clara,* 775 F.2d 1359, 1366 (9th Cir.1985). *See also* Cal.Civ.Pro. Code § 1908 (including "special proceedings" in provision regarding conclusiveness of a judgment or final order).

claims involving interference with his teaching career and business activities, and interference with his right to be free from defamation, implicate a separate primary right from that addressed in seeking a writ of mandate for the limited ministerial purpose of removing improperly entered materials from his files. Although the inclusion of this information in his files may be evidence relating to the alleged interference with his teaching duties, the right to proper administrative procedures regarding entry of information into his personnel file is not so inextricably intertwined with his teaching career concerns as to be merged into a single primary right.

However, while Clark's initial petition for a writ of mandate focused narrowly upon the derogatory material entered in his file, his actual "motion for a peremptory writ of mandate" asked not only for the removal of the material from his file but also for an order to the College "to desist from all respondent's activities which are depriving the petitioner of his normal teaching duties and responsibilities." In addition, in various memoranda submitted in support of his motion, Clark argued that the making of the allegedly defamatory sexual harassment charges, the entering of the material into his file, the denial of a hearing, and the interference with his teaching duties were punitive actions taken against him. He alleged violations of state statutes and of his "fundamental constitutional rights."

At the hearing on the motion for a writ of mandate, Clark's counsel subpoened 35 witnesses to testify as to Clark's excellence as an instructor, that he did not discriminate against female students, and was not sexually aggressive. Even though the court questioned its relevance, Clark's counsel continually presented testimony and evidence concerning Clark's competence and abilities, the falsity of the accusations of sexual discrimination, violation of his due process right to a hearing on the charges, reassignment of his teaching responsibilities, and the College's allegedly punitive conduct toward him.

When the state court judge asked whether the only subject properly before the court concerned the entry of material into Clark's personnel file without proper notice, Clark's counsel vigorously disagreed, referring to the changes in Clark's teaching duties and the serious charges made against him. In fact, at one point, responding to the defendants' statement that Clark could bring another action raising these claims, Clark's counsel stated the violation involved Clark's federal civil rights and went on to say: "We are here now, it seems to me, we can dispose of this and we ought to get going." While open to other interpretations, this can be read as indicating counsel's intention to deal with the civil rights issues in that action.

Although the judge appeared to lean toward limiting the mandamus proceeding to the issue of the material entered into the personnel file, Clark's counsel continually attempted to litigate other issues and claims. The lack of a clear direction in his counsel's conduct of the mandamus hearing does leave the nature of the claims actually litigated open to some dispute. However, the cause of action involving interference with teaching duties was clearly raised in the pleadings before the state court, and no definite rulings narrowed the pleadings at the hearing. On balance, we conclude the district court was correct in ruling that the cause of action involving interference with Clark's teaching duties was raised and litigated.

With one exception, which is discussed below, the trial judge did reserve his ruling on the admissibility of the evidence Clark's counsel presented in support of that cause of action, and then failed to issue a definite ruling. However, this absence of a definite ruling on the cause of action involving interference with teaching duties does not necessarily preclude application of res judicata. The state court did reach a final judgment by granting Clark a writ on his cause of action involving the material in his file. That is sufficient in this case to demonstrate that the state action was concluded.

Although it is commonly said that a judgment has preclusive effect only if it is "on the merits," an *opportunity* to reach the merits is sufficient to invoke a preclusive effect. C. Wright, *Law of Federal Courts* § 100A, at 680–81 (1983). The state court may not have expressly ruled on Clark's cause of action involving interference with his primary right to his teaching responsibilities, but he was not prevented from reaching the merits because of a procedural barrier which constitutes an exception to the general rule of claim preclusion.[2] *Id.* § 100A, at 681.

■ If the state trial court failed to issue judgment on this cause of action, Clark's proper remedy was a motion demanding a definite ruling or pursuit of an appeal, not relitigation of the cause of action involving that primary right in another forum. Having apparently abandoned a cause of action on that primary right in the state proceeding, Clark may not seek to raise it again in a federal action. *See Casto v. Arkansas-Louisiana Gas Co.*, 597 F.2d 1323, 1326 (10th Cir.1979) (where plaintiff includes multiple claims in suit, and drops one claim in silence, he may not, after judgment in that suit, maintain a separate suit on that dropped claim).

The allegations made before the state court substantially overlap with those made in Clark's section 1983 complaint filed in the district court. In the section 1983 complaint, he alleges a conspiracy to interfere with his teaching career and private business activities,[3] particularly through false and defamatory reports of sexual harassment, reassignment of his teaching responsibilities, reductions in his teaching duties, changing of his class schedule without notice, and efforts to discourage clients from retaining him as a private contractor. He again alleges interference with his rights involving union representation. And his allegation of a violation of his constitutional right to due process involves the denial of a hearing on the sexual harassment charges that was an express complaint in the state proceeding. In sum, his section 1983 action implicates the same primary rights to be free from interference in the conduct of his teaching career and to be free from defamation[4] that were raised in the state court proceeding.

Although Clark did not raise a section 1983 claim in the state proceeding, the doctrine of res judicata applies not only to those claims actually litigated in the first action but also to those which might have been litigated as part of that cause of action. *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976). A section 1983 claim may be brought in California state courts.[5] *Brown v. Pitch-*

2. *See* Restatement (Second) of Judgments § 20 (listing exceptions to res judicata such as where the first judgment was for lack of jurisdiction, improper venue, nonjoinder or misjoinder of parties, prematurity, failure to satisfy a precondition to suit, or dismissal without prejudice). *See also Milicevich v. Sacramento Medical Center*, 155 Cal.App.3d 997, 1002 n. 4, 202 Cal.Rptr. 484, 486–87 n. 4 (1984) (citing Restatement (Second) of Judgments § 20 as listing extenuating circumstances allowing avoidance of res judicata).

3. The allegation of interference with his private business activities apparently was not raised in the state court proceeding. However, it is raised in the section 1983 action as part of the alleged general scheme or conspiracy to interfere with his teaching career, allegedly in reprisal for his criticism of the college administration. It falls within the same "primary right," as part of the same transaction or series of transac-

tions. *See* Restatement (Second) of Judgments § 24.

4. At the state mandamus hearing, defendants did argue that evidence involving the truth of the charges of sexual harassment was irrelevant, and that the issue of defamation was not before the court. Again, there was no definite ruling by the state court judge on this matter.

5. Furthermore, a claim involving federal constitutional rights may be joined to a California mandamus action. *See Gallagher v. Frye*, 631 F.2d 127, 130 (9th Cir.1980). Indeed, California courts have expressly stated that a writ of mandate is an appropriate remedy for the enforcement of a civil right. *Hardy v. Stumpf*, 37 Cal.App.3d 958, 961, 112 Cal.Rptr. 739, 741 (1974); *Wrather-Alvarez Broadcasting, Inc. v. Hewicker*, 147 Cal.App.2d 509, 305 P.2d 236, 238 (1957). In addition, relief in the form of damages may be granted together with a writ of

*ess*, 13 Cal.3d 518, 531 P.2d 772, 774–75, 119 Cal.Rptr. 204, 206–07 (1975); *see Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir.1985).

Accordingly, because Clark's causes of action involving the primary rights to be free of interference with his teaching activities and from defamation of his character were raised in the state court mandamus proceeding, he is precluded from relitigating those causes of action in federal court.[6] By expanding the opportunity to litigate actions in a mandamus proceeding, California has narrowed the situations in which a second opportunity to litigate need be given. *See* C. Wright, *Law of Federal Courts* § 100A, at 679 (1983).

### B. Exception to Jurisdiction Over Teaching Reassignments

There was one exception to the state court's jurisdiction. The state judge accepted the College's argument that Clark's complaint concerning reassignment to teach different classes was a matter properly deferred to a state administrative body with exclusive jurisdiction over labor disputes in public education, and sustained objections to evidence on that matter. However, as Clark alleges in his section 1983 complaint, this is merely one example of the interference with his activities allegedly engaged in by the College. Having raised a general cause of action involving interference with his teaching duties before the state court, the cause of action extinguished "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of

mandate regarding the same cause of action. *See* Cal.Civ.Pro. Code §§ 1090, 1095.

**6.** Clark's reliance on *Gallagher v. Frye*, 631 F.2d 127 (9th Cir.1980) is misplaced. This court did hold in that case that the plaintiff's civil rights suit in federal court was not barred by a previous California mandamus judgment. However, the court held that there were two separate causes of action alleging different wrongs. The state mandamus action involved the failure of the plaintiff's employer, a museum, to comply with a civil service board order to reinstate him.

which the action arose." *See* Restatement (Second) of Judgments § 24.

The rule against splitting a cause of action, which parallels the doctrine of res judicata, applies where the first suit is brought in a court which has no jurisdiction to give a judgment as to one part of the plaintiff's cause of action. Once the plaintiff has brought a lawsuit in one court which can enforce only part of a cause of action, and recovers judgment, he cannot insist upon maintaining a subsequent lawsuit for the other part of his cause of action. *Mattson v. City of Costa Mesa*, 106 Cal.App.3d 441, 449, 164 Cal.Rptr. 913, 918 (1980) (quoting what is now Restatement (Second) of Judgments § 24 comment g).

The state court judge, although declining to exercise jurisdiction over the complaint with regard to reassignment in classes, never ruled that the court lacked jurisdiction over Clark's other complaints involving interference with his teaching duties. Clark also complained of changes without notice in his class schedule, the reduction in his teaching load, allegedly in breach of his contract, and the failure to allow him a hearing on the charges of sexual misconduct, all allegedly intended as punitive actions against him.

Clark, having voluntarily brought his initial lawsuit in a court without jurisdiction to redress the invasion of his interest in class assignments, but with jurisdiction to adjudicate the remainder of his cause of action involving interference with his teaching duties, and having pursued that lawsuit to judgment, is now barred from raising that cause of action again.[7] *See* Restate-

The federal civil rights suit involved the separate wrong of his termination in the first instance. *Id.* at 129. In the instant case, Clark has not alleged two different wrongs, justifying a separate federal action.

**7.** We need not reach the question as to whether Clark could pursue an administrative remedy limited to the issue of his class assignments. The state court's apparent decision that the court was without jurisdiction to hear the class reassignment issue could be interpreted as a dismissal without prejudice to bringing that part

ment (Second) of Judgments § 24 comment g.

█ It therefore follows that the College, by raising the primary jurisdiction issue and thus preventing litigation of the class reassignment matter, is not estopped from raising the defense of res judicata to the cause of action involving the general primary right to be free from interference with teaching responsibilities. Although a party who successfully blocks litigation of a cause of action in one proceeding may not hide behind the defense of res judicata in the second proceeding, *Davies v. Krasna*, 12 Cal.App.3d 1049, 1056, 91 Cal.Rptr. 250, 254 (1970), such was not the case here. The College was successful, at most, in blocking only a part of the cause of action. The state court's failure to address the remainder of the cause of action involving interference with Clark's teaching duties is attributable to Clark's failure to move for a definite ruling or to appeal the judgment.[8]

### C. Manifest Injustice

█ Clark argues that preclusion of his section 1983 claim would work a "manifest injustice" upon him, thus mandating an exception to the doctrine of res judicata in his case.[9] Under California law, relief from the preclusive doctrine of res judicata has been granted in the past under unusual circumstances to prevent "manifest injustice." *Greenfield v. Mather*, 32 Cal.2d 23, 35, 194 P.2d 1, 8 (1948); *see Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 742 (9th Cir. 1984) (en banc).

However, the California Supreme Court has said this *Greenfield* doctrine is "of

doubtful validity." *Slater v. Blackwood*, 15 Cal.3d 791, 796, 543 P.2d 593, 595, 126 Cal.Rptr. 225, 227 (1975). More importantly, its application appears to be limited to situations where the doctrine of res judicata prevents relitigation of pure questions of law. *See City of Watsonville v. Merrill*, 137 Cal.App.3d 185, 194–95, 186 Cal.Rptr. 857, 863 (1982) (res judicata can be avoided on grounds of injustice where "the only issue between the parties is one of law"). The causes of action raised in Clark's section 1983 suit do not appear to present any legal questions of public importance and appear primarily to involve questions of fact. It does not amount to "manifest injustice" to preclude Clark from raising in federal court a cause of action he litigated in state court.

### D. New Occurrences Since State Court Judgment

Finally, Clark claims that new injuries to new rights have accrued since the conclusion of the state mandamus action.

The College contends that res judicata applies to all alleged events occurring subsequent to the state court judgment, because they are the continuing results of decisions made by the College prior to the initiation of the state proceeding. The broad nature of the mandamus pleadings, asking for a prospective order to the College "to desist" from interfering with Clark's teaching duties, covered continuing future conduct by the College in that respect. Thus, the College argues, Clark's present cause of action does not allege any invasion of a primary right that was not

---

of the cause of action in the administrative agency.

**8.** When the state judge asked whether many of Clark's claims were inappropriate for a mandamus action and might even be beyond the jurisdiction of the court in a mandamus proceeding, the College, not surprisingly, agreed. Clark's counsel argued against the court's erroneous surmise but did not press for a ruling. If he had, and assuming that the court had continued in its misperception of the law, Clark could have appealed the ruling and had it corrected in the state appellate court. Instead, Clark seeks

to assert in federal court the same cause of action that the state court had left unresolved.

**9.** It also should be noted that there is no exception to the rules of claim and issue preclusion for federal civil rights actions under 42 U.S.C. § 1983. *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 84, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 97–98, 101 S.Ct. 411, 416–417, 66 L.Ed.2d 308 (1980); *see also Piatt v. MacDougall*, 773 F.2d 1032, 1034 (9th Cir.1985) (en banc).

within the scope of the mandamus proceeding.

■ Although the College's argument has superficial appeal, the doctrine of res judicata does not necessarily preclude all future actions with regard to continuing conduct simply because the previous action sought prospective relief. The doctrine of res judicata extends only to the facts and conditions as they existed at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts determined in the judgment. *Colvig v. RKO General, Inc.*, 232 Cal. App.2d 56, 42 Cal.Rptr. 473, 485 (1965). When other facts or conditions intervene, forming a new basis for a claim, the issues are no longer the same and res judicata does not apply. *Id.; see Melendres v. City of Los Angeles*, 40 Cal.App.3d 718, 730, 115 Cal.Rptr. 409, 417 (1974).

■ As there was no definite judgment on the merits of the causes of action involving interference with Clark's teaching duties and defamation, we cannot ascertain what facts and conditions existed at the time or whether new facts or conditions have intervened. Clark alleges that the College continues to reassign him to different classes, reduce his teaching load, and change his class schedule with little or no notice. It may well be that the College's actions since the state court judgment have been taken for different reasons, that the degree of interference with his teaching duties has increased, or that the College has taken additional actions of a different nature. There simply is no definite statement of the facts in the state court judgment with which we can compare the College's subsequent conduct or present conditions.

Consequently, we can regard the state court judgment as res judicata only to that part of Clark's claim arising out of conduct by the College prior to the date of that judgment.

*E. Conclusion*

At the prior state court proceeding, Clark had the *opportunity* to obtain a judgment on the merits of his causes of action involving interference with his teaching duties and defamation. He was not precluded from obtaining a definite judgment due to a procedural bar that would constitute an exception to the doctrine of res judicata. Consequently, the state court judgment acts as a bar to any claims Clark may bring involving conduct by the College prior to the date of the judgment.

Since there was no definite state court judgment on the actual merits of his causes of action involving interference with his teaching duties and defamation, we cannot ascertain whether new facts or conditions have intervened, giving rise to new rights to relief. Consequently, the doctrine of res judicata does not preclude Clark from maintaining his section 1983 action with regard to events and conduct which have occurred since the date of the state court judgment.

## III

## OTHER ARGUED GROUNDS FOR DISMISSAL

Although the district court based its dismissal on the doctrine of res judicata, we may affirm on any basis fairly supported by the record. *City of Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir.1985). In its motion for judgment on the pleadings, the College urged dismissal on two basic grounds other than res judicata.

*A. Failure to State a Constitutional Claim*

■ The College argues that Clark fails to state a claim upon which relief can be granted. To establish a prima facie case under section 1983, 42 U.S.C. § 1983, Clark must allege that the College acted in some way to deprive him of a constitutionally or federally protected right. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). A tenured teacher in California has no vested right in a particular teaching assignment. *See Thompson v. Modesto City High School District*, 19 Cal.3d 620, 623–24, 139 Cal.Rptr. 603, 605, 566 P.2d 237, 239 (1977) (school district has

broad power to reassign tenured teachers); *Malynn v. Morgan Hill Unified School District,* 137 Cal.App.3d 785, 786–89, 187 Cal.Rptr. 303, 305 (1982) (same); *see also* Cal.Educ. Code § 72413(c) (West 1978) (granting discretion to superintendent of community college district to assign certified employees to positions). Consequently, the College contends, Clark has failed to allege any cognizable constitutional right which has been infringed by the College's conduct.

Although the College may indeed have general discretion in making teaching assignments, we have previously held that reassignment of a teacher in retaliation of the exercise of constitutional right of free speech may create a cause of action. *See Bernasconi v. Tempe Elementary School District,* 548 F.2d 857 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977). Clark has alleged that the interference with his teaching duties has been in retaliation for his exercise of First Amendment rights in criticizing the College's instructional program.[10]

Furthermore, Clark has raised other complaints in support of his claim. He also alleged a reduction in his teaching load, changes in class scheduling with little or no notice, efforts to discourage others from retaining him as a private contractor, and defamatory reports of sexual harassment, all allegedly in reprisal for his exercise of free speech.

### B. *Infringement of Right of Union Association*

Clark also alleges that the College's actions infringe his right to associate with a

labor organization.[11] Clark has been the union representative from the criminal justice training center.

The College argues that Clark failed to exhaust state administrative remedies. Under the Educational Employment Relations Act, the state Public Employment Relations Board has exclusive initial jurisdiction over employment disputes. Cal.Gov. Code § 3563.2 (West 1980).

■ However, in an action under section 1983, a plaintiff need not exhaust state administrative remedies. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982).

The College misperceives the nature of Clark's claim involving his union affiliation. Apparently, the College believes Clark is raising an unfair labor practice claim regarding an employer's violation of the state statutory right to engage in protected activities. Were this the case, Clark's claim would not be of constitutional dimension and thus would not be sustainable under section 1983. Not only would exhaustion of state administrative remedies be required, but it is questionable whether a federal court could properly hear such a matter, involving state public employment labor policy, under pendent jurisdiction.

Rather, Clark's claim before this court under section 1983 is premised on an infringement of his right of association under the First Amendment. Clark alleges that the College's actions interfering with his teaching duties are attributable to his union affiliation. He claims that such con-

---

**10.** The ultimate question of whether a teacher's speech is constitutionally protected requires balancing "the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The *Pickering* balancing test requires the court to consider the impact of the teacher's conduct on "supervisorial discipline, loyalty, and harmony among co-workers," *Nicholson v. Board of Education,* 682 F.2d 858, 865 (9th Cir.1982), weighed

against the need for a free debate on fundamental educational issues of public concern, *Peacock v. Duval,* 694 F.2d 644, 647–48 (9th Cir. 1982). *See also Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

**11.** Clark raised the issue of union affiliation at the previous state court proceeding. Accordingly, our analysis with regard to the effect of res judicata in this case applies with equal vigor to Clark's cause of action for infringement of his right of association with a labor organization.

duct, by discriminating against him on account of his status as a union member and representative, infringes his constitutionally protected right of association with the union.

As the College has raised no challenge or argument on this point, we need not decide at this time whether Clark's right of association with the union touches on a matter of public concern so as to give rise to a cause of action in federal court for a violation of First Amendment rights. *See Boals v. Gray*, 775 F.2d 686, 693 (6th Cir.1985); *McKinley v. City of Eloy*, 705 F.2d 1110, 1113–15 (9th Cir.1983).

This case is remanded for determination of any claims arising on facts after the entry of the state mandamus judgment. Each party shall bear its own costs.

AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.